## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RA'KISHA KING,

    Plaintiff,

             v.

J.B. HUNT TRANSPORT, INC.,

    Defendant.

Civil Action No.
1:23-cv-03597-SDG

## OPINION AND ORDER

This matter is before the Court on the Report and Recommendation (R&R) of United States Magistrate Judge Regina D. Cannon [ECF 51], which recommends that Defendant J.B. Hunt Transport, Inc.'s motion to dismiss [ECF 36] be granted in part and denied in part. Plaintiff Ra'Kisha King, appearing *pro se*, and Defendant each filed objections to the R&R, as well as responses to each other's objections [ECFs 56, 57, 58, 59[1]]. After careful consideration, the parties' objections are **OVERRULED**, and the R&R is **ADOPTED** in its entirety.

## I.     Background

The factual and procedural background of this case are fully set out in the R&R.[2] Of particular relevance here, Defendant employed Plaintiff as a truck driver

---

[1]  Plaintiff's response to Defendant's objections was docketed as a "Supplemental Affidavit" in response to the R&R. ECF 59.

[2]  ECF 51, at 1–8.

from August 2017 until her termination in June 2020.[3] Defendant had also suspended Plaintiff from May to October 2019 because of Plaintiff's refusal to undergo certain medical testing on the grounds that it would trigger her allergies[4]—the circumstances surrounding this dispute form the basis of Plaintiff's disability discrimination and retaliation claims.

In January 2020, Plaintiff sent a letter to the Atlanta District Office of the EEOC which included allegations of disability and race discrimination by Defendant.[5] The letter was stamped received by the EEOC on February 13, 2020, and was assigned charge number 410-2020-03747.[6] Plaintiff signed the February 2020 letter, but not under oath or penalty of perjury.[7]

Subsequently, in June 2020, Plaintiff filed a formal EEOC charge using the same charge number, making similar allegations of disability and race discrimination by Defendant.[8] The June 2020 charge was signed under penalty of

---

[3]    ECF 31, ¶ 3.

[4]    *Id.* ¶¶ 12–23, 36–52, 61, 79.

[5]    *Id.* ¶ 78; ECF 39, at 63–65.

[6]    ECF 39, at 63.

[7]    *Id.* at 65.

[8]    ECF 35, at 37.

perjury.[9] The day after Plaintiff filed the charge, she was fired by Defendant, purportedly for falsifying records and filing a false complaint.[10]

In October 2020, Plaintiff filed another formal EEOC charge, again using the same charge number.[11] The October 2020 charge alleged that one of Defendant's directors harassed her and then terminated her for filing the June 2020 charge.[12] The October 2020 charge was also signed under penalty of perjury.[13] The EEOC issued Plaintiff a Right to Sue letter for Charge No. 410-2020-03747 on June 7, 2023, and Plaintiff filed her initial complaint in this Court on August 14, 2023.[14]

Plaintiff's operative complaint contains seven counts: (1) failure to accommodate, in violation of the Americans with Disabilities Act; (2) retaliation in violation of the ADA; (3) retaliatory hostile work environment in violation of the ADA; (4) intentional infliction of emotional distress (IIED) under Georgia law; and (5, 6, 8) retaliation in violation of Title VII of the Civil Rights Act of 1964.[15] The R&R recommends that Defendant's motion to dismiss be granted as to Counts 2,

---

[9]  *Id.*

[10]  ECF 31, ¶¶ 25, 77, 78.

[11]  ECF 35, at 81.

[12]  *Id.*

[13]  *Id.*

[14]  ECF 39, at 61; ECF 1.

[15]  ECF 31. The final Title VII retaliation claim is actually listed as Count 8, but there is no Count 7.

4, 5, and 6, but denied in part as to Count 1 (regarding the denial of Plaintiff's accommodation request in October 2019), and denied as to Counts 3 and 8.[16] The R&R also denied several motions filed by Plaintiff which are not at issue here.[17]

## II.   Applicable Legal Standard

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

Absent objection, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and need only satisfy itself that there is no clear error on the face of the record. Fed. R. Civ. P. 72(b). The district court has broad discretion in reviewing a magistrate judge's report and recommendation. In addressing objections, it may consider an argument that was never presented to the magistrate

---

[16]   ECF 51.

[17]   *Id.*

judge, and it may also decline to consider a party's argument that was not first presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009). Further, "'[f]rivolous, conclusive, or general objections need not be considered by the district court.'" *Schultz*, 565 F.3d at 1361 (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

When a litigant chooses to proceed *pro se*, her pleading is "held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotation omitted); *see also Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). But even a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (holding that "once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). The leniency the Court must apply does not permit it "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

### III.    Discussion

Undersigned will first address Defendant's objections, which are directed to two of the R&R's preliminary procedural conclusions: (1) that Plaintiff's February 2020 letter to the EEOC constituted a charge of discrimination, such that Plaintiff exhausted her administrative remedies; and (2) that Plaintiff's June 2020 and October 2020 formal charges cured the lack of verification in Plaintiff's February 2020 letter for her ADA retaliatory hostile work environment.[18] Undersigned will then address Plaintiff's objections, which primarily dispute the R&R's recommendation to dismiss Count 1 in part and Count 2 in its entirety.[19]

### A.    Defendant's Objections

#### 1.    The R&R did not err in concluding that Plaintiff's February 2020 letter to the EEOC constituted a charge of discrimination, such that Plaintiff exhausted her administrative remedies.

Before filing suit under the ADA, plaintiffs must exhaust their administrative remedies by timely filing a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (establishing the charge-filing requirement for Title VII claims); *id.* § 12117(a) (applying the remedies and procedures of Title VII to the ADA). A charge must be filed within 180 days after the alleged unlawful employment practice occurred. *Id.* § 2000e-5(e)(1); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d

---

[18]    *See generally* ECF 56.

[19]    *See generally* ECF 57.

1314, 1317 (11th Cir. 2001) ("For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act.").

The R&R and Defendant appear to agree that the Eleventh Circuit's opinion in *Wilkerson* generally governs, though they disagree as to the refinement of *Wilkerson* in subsequent caselaw.[20] In *Wilkerson*, the Eleventh Circuit adopted the "manifest-intent approach" in deciding whether an EEOC intake questionnaire constitutes a valid charge under Title VII for statute of limitations purposes. 270 F.3d at 1319 (citing *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983); *Philbin v. Gen. Elec. Cap. Auto Lease, Inc.*, 929 F.2d 321, 324–25 (7th Cir. 1991); *Whitmore v. O'Connor Mgmt., Inc.*, 156 F.3d 796, 799 (8th Cir. 1998)). Under the manifest-intent approach, "[t]o determine whether the intake questionnaire in this case can function as a charge, we must ask the following question: Would the circumstances of this case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC?" *Id.* at 1320. This standard "requires a charging party to indicate clearly that she wishes to activate these functions," and thus "ensures that, once a charging party's intent is made clear, the EEOC's inaction will not vitiate her claim." *Id.* at 1319–20. At the same time, courts are not to "treat intake questionnaires willy-nilly as

---

[20] *See* ECF 56, at 2–10.

charges." *Id.* at 1320. It is worth noting that Plaintiff's February 2020 letter was not an EEOC intake questionnaire, though Defendant seems content to put the letter on that footing in this analysis.

Defendant's objection hinges on the Eleventh Circuit's subsequent decision in *Bost v. Federal Express Corp.*, 372 F.3d 1233 (11th Cir. 2004), an Age Discrimination in Employment Act case.[21] The *Bost* opinion appears to circumscribe *Wilkerson*, distinguishing *Wilkerson* as a case involving "exceptional circumstances." *Id.* at 1240. *Bost* distills the holding of *Wilkerson* to three factors: "(1) the communication between the plaintiff and the EEOC; (2) the EEOC intake questionnaire form itself; and (3) the response by the EEOC to the completed questionnaire." *Id.* Ultimately, the Eleventh Circuit in *Bost* concluded that the plaintiff's intake questionnaire did not constitute a valid charge, reasoning that the EEOC did not treat the questionnaire as a charge, the plaintiff subsequently filed a formal charge (indicating he did not intend for the questionnaire to be a charge), and there was no evidence of misleading communications between the plaintiff and the EEOC. *Id.* at 1240–41.

The Supreme Court has since taken up the manifest-intent approach in the context of the ADEA. *See generally Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008).

---

[21]    ECF 56, at 4–8.

In *Holowecki*, the Supreme Court expressly approved of the manifest-intent approach described in *Wilkerson*, but only to the extent that the approach examines "the filing . . . from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* at 402. The Supreme Court then declined to adopt a standard which "condition[ed] the definition of charge, and hence an employee's ability to sue, upon the EEOC's fulfilling its mandatory duty to notify the charged party and initiate a conciliation process." *Id.* at 403. The Supreme Court also rejected an argument that a later formal charge demonstrated that the plaintiff did not intend for the earlier-filed intake questionnaire to serve as a charge, holding that "[p]ostfiling conduct does not nullify an earlier, proper charge." *Id.* at 406.

Ordinarily, *Holowecki* would have put an end to the debate. But *Holowecki* also included a "cautionary preface":

> [W]e note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990. While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case.

*Id.* at 393 (citations omitted). The Eleventh Circuit has since assumed without deciding that *Holowecki* applies to a charge under the ADA. *E.E.O.C. v. Summer Classics, Inc.*, 471 F. App'x 868, 871–72 (11th Cir. 2012) (assuming *arguendo* that *Holowecki* applies to a charge under the ADA but concluding that the plaintiff's intake questionnaire did not satisfy the standard); *see also Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1233 (N.D. Ga. 2013) (holding that *Holowecki* did not abrogate *Wilkerson*'s requirement that a charge be verified, but plaintiff's subsequent formal charge did not cure the earlier lack of verification). And *Bost* was a case decided under the ADEA, such that the "cautionary preface" in *Holowecki* cautions against its use here in the context of the ADA and Title VII without further analysis.

As the prior precedent[22]—with a limited blessing from the Supreme Court in *Holowecki*—undersigned will apply *Wilkerson*'s manifest-intent approach to Plaintiff's February 2020 letter, as clarified by *Holowecki*'s direct admonition that the Court must consider the letter "from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." 552 U.S. at 402; *cf.*

---

[22] "[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993).

*Chesnut*, 971 F. Supp. 2d at 1233 (applying the *Wilkerson* manifest-intent approach post-*Holowecki*). *Wilkerson*'s references to post-filing conduct could reasonably be attributed to the Eleventh Circuit's longstanding "reluctan[ce] to condition an action for discrimination on the EEOC's performance of its duties," 270 F.3d at 1320 (citing *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994)), rather than to an intent to make the manifest-intent analysis forward-looking.

Returning to the R&R's conclusion, then, undersigned agrees that Plaintiff's February 2020 letter demonstrates a manifest intent to activate the EEOC's machinery and remedial process as to her ADA claims. While Defendant notes that the letter was not addressed to the EEOC in the sense that the EEOC was not listed on the letter as the recipient, Plaintiff did mail the letter to the EEOC.[23] Defendant has not challenged the R&R's inference that the EEOC is the entity that hand-wrote the charge number on the front of the letter.[24] The letter contains a litany of complaints about Defendant's employment practices, including the ADA allegations related to Plaintiff's allergies.[25] The letter begins by stating "[p]lease

---

[23] Defendant's argument that the letter was "addressed to" is a plausible interpretation of the letter, but a reasonable inference in Plaintiff's favor is that Defendant's name at the top of the letter was a title and not an addressee. ECF 39, at 63.

[24] ECF 51, at 6 n.5.

[25] ECF 39, at 63–65. Defendant notes that the letter also contains allegations about discrimination beyond the purview of the EEOC, *see* ECF 56, at 6, but the Court

allow this letter to serve as my complaint against the JB Hunt Lithia Springs terminal," and concludes by stating that Plaintiff's allegations "support[ ] my claim of being discriminated against as I was unable to work for several weeks."[26] Plaintiff also signed the letter as "Complainant."[27] Taken together, the R&R did not err in concluding that Plaintiff's February 2020 letter was a valid charge, and therefore Defendant's first objection is **OVERRULED**.

>    **2.    The R&R did not err in concluding that Plaintiff's June 2020 formal charge cured the lack of verification in Plaintiff's February 2020 letter for her ADA retaliatory hostile work environment.**

Defendant's second objection asserts that, even if Plaintiff's February 2020 letter constituted a valid charge, the subsequent formal charges filed in June 2020 and October 2020 did not cure Plaintiff's failure to verify the February 2020 letter.[28] This is because, in Defendant's view, the June 2020 and October 2020 charges did not amplify or clarify the allegations in the February 2020 letter, and therefore are not valid amendments to the February 2020 letter.[29] The R&R concluded that the

---

declines at this stage to construe Plaintiff's self-drafted letter so strictly against her.

[26]    ECF 39, at 63, 65.

[27]    *Id.* at 65.

[28]    ECF 56, at 10–12.

[29]    *Id.*

June 2020 and October 2020 charges were amendments to the February 2020 letter and thereby cured its initial lack of verification.[30]

Defendant's read of the law is too narrow, and undersigned concludes that the R&R did not err. The applicable EEOC rule provides that:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b). Thus, plaintiffs can cure their failure to verify their original charge—as was the case here[31]—by filing a subsequent verified amendment. *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 115 (2002) ("Construing § 706 [of Title VII] to permit the relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently."). It is undisputed here that the June 2020 and October 2020 charges were both verified. The question, then, is whether they are "amendments" under the EEOC's rules.

In *Kelly v. Dun & Bradstreet Corp.*, 457 F. App'x 804 (11th Cir. 2011), relied on by Defendant, the Eleventh Circuit interpreted the EEOC amendment rule's

---

[30]    ECF 51, at 15.

[31]    ECF 39, at 65.

"clarify and amplify" language, holding that "[a]n amendment constitutes a mere clarification and amplification of the original charge where it only spells out in greater detail the employee's original allegations." *Id.* at 805–06 (citing as binding authority from the former Fifth Circuit *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464–65 (5th Cir. 1970)).[32] Notably, the Eleventh Circuit in *Kelly* did not apply its interpretation of the EEOC amendment rule, but instead remanded the case to the district court to determine which of the allegations in the plaintiff's validly filed but untimely charge "relate to or grow out of the allegations" in the plaintiff's earlier, timely charges, for which there was a dispute as to whether they were validly filed with the EEOC. *Id.* at 806.

Tracing the proposition back further, the former Fifth Circuit in *Sanchez* rejected an employer's argument that an untimely amended charge contained

---

[32] Undersigned notes that the Eleventh Circuit in *Kelly* made an interesting rhetorical choice to use the word "only" in place of the former Fifth Circuit's use of "simply" in *Sanchez*. *Compare Kelly*, 457 F. App'x at 805–06 (emphasis added) ("An amendment constitutes a mere clarification and amplification of the original charge where it **only** spells out in greater detail the employee's original allegations."), *with Sanchez*, 431 F.2d at 465 (emphasis added) ("[W]e think the allegations included [in the amended charge] constituted mere clarification and amplification of the original charge within the meaning of 29 C.F.R. § 1601.11(b) . . . . . [the] amended charge **simply** spelled out in greater detail facts tending to demonstrate such treatment."). While these terms could be used synonymously, "only" may also imply a limiting principle that is not suggested by "simply." As the source of the proposition, undersigned will rely upon the formulation in *Sanchez*.

"new and distinct" factual allegations, such that it did not relate back to an earlier timely charge. 431 F.2d at 464–65. The *Sanchez* court noted that the plaintiff's earlier charge "stated facts suggesting that she had been the victim of abuse, harassment, and unfair treatment," and "[h]er amended charge simply spelled out in greater detail facts tending to demonstrate such treatment," and thus concluded that there was "no fatal variance between the original charge and the amended charge." *Id.* at 465; *see also id.* ("In the context of Title VII we find sufficient continuity running through the original charge and the amended charge."). The principle undergirding much of the opinion in *Sanchez* is that "procedural technicalities are not to stand in the way of Title VII complaints." *Id.* More to the point here, *Sanchez* contemplates a situation where a plaintiff files an initial charge but then amends the charge to include additional factual allegations. *Id.*; *see also Chesnut*, 971 F. Supp. 2d at 1233–34 (holding that the plaintiff's charge did not amplify or clarify the intake questionnaire, such that the charge would cure the questionnaire's lack of verification, where the charge was based solely on a new allegation that the plaintiff was compelled to resign in violation of the ADA). Thus, the EEOC's amendment rule is designed to function as a shield for the employer against new but untimely claims.

Here, Defendant instead seeks to wield the EEOC's amendment rule as a sword against Plaintiff's ADA retaliatory hostile work environment claim in

Count 3, arguing that Plaintiff's June 2020 and October 2020 formal charges did not amplify or clarify this claim, and so the claim as it stood in the February 2020 letter remains unverified.[33] Defendant has not provided any direct support for this claim-splitting approach to retroactive verification.[34] The reason for the charge-filing requirement is that "the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). It follows that "judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Id.* at 1279–80 (internal quotation marks and citation omitted); *see also Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 (11th Cir. 1994) (citing *Sanchez*) ("A plaintiff's judicial complaint is limited by the scope of the EEOC investigation

---

[33]  ECF 56, at 10–12.

[34]  Defendant's citation to *Francois v. Miami Dade County*, 432 F. App'x 819 (11th Cir. 2011) is distinguishable, as the court there concluded that the plaintiff's EEOC intake questionnaire was not a charge, and thus further concluded that the plaintiff's national origin discrimination claim—which was present in the questionnaire but not in the subsequent formal charge—was not administratively exhausted. *Id.* at 822. Here, the R&R concluded, and undersigned agrees, that the February 2020 letter **is** the charge, and the subsequent June 2020 charge is an amendment that, among other things, cured the letter's lack of verification.

which can reasonably be expected to grow out of the charge of discrimination."). But here we are faced with a different scenario: an *old* allegation of a retaliatory hostile work environment which receives short shrift in Plaintiff's amended charge.

With all of this in mind, undersigned concludes that the verified June 2020 charge cured the lack of verification in the February 2020 letter as to Count 3.[35] The June 2020 charge bears the same EEOC case number as the February 2020 letter, and there are no obvious inconsistencies between the two. The June 2020 charge references the medical testing that Defendant allegedly required Plaintiff to take in spite of her allergies and broadly alleges discrimination under the ADA. The EEOC, having both the February 2020 letter and the June 2020 charge in its possession, could reasonably be expected to investigate the circumstances surrounding the testing, including Plaintiff's suspension for refusing to submit and the allegedly retaliatory and/or discriminatory nature of Defendant's attempts to get Plaintiff to comply. For these reasons, Defendant's second objection is **OVERRULED**.[36]

---

[35] Defendant does not argue that any other claim from the February 2020 letter remained unverified after Plaintiff filed her June 2020 charge.

[36] Because undersigned agrees that Plaintiff's failure to verify the February 2020 letter was cured by the June 2020 charge, this Order will not address any effect of the October 2020 charge.

### B.     Plaintiff's Objections

In consideration of Plaintiff's *pro se* status, the Court will construe her objections liberally. In doing so, undersigned discerns that Plaintiff objects to the R&R's recommendation to dismiss Count 1 in part and Count 2 in its entirety.[37] Plaintiff also addresses the R&R's recommendation to dismiss the IIED claim in Count 4 on statute of limitations grounds, but because she does not provide any reason the statute of limitations should not apply here, this objection is **OVERRULED**.[38]

As to the ADA failure-to-accommodate claim in Count 1, Plaintiff appears to object that the claim should include a violation of 42 U.S.C. § 12112(b)(5)(A) and 29 C.F.R. § 1630.2(o)(3), for Defendant's failure to engage in a good faith interactive process, and/or a violation of 42 U.S.C. § 12112(d), EEOC, and FMCSA/DOT regulations, for Defendant's requiring her to participate in the medical testing.[39] This argument was not addressed in the R&R, because it was not alleged in the

---

[37] *See generally* ECF 57.

[38] As for Plaintiff's argument that she is covered as a "qualified individual" under the ADA, *see* ECF 57, at 7, Defendant did not challenge this in its motion to dismiss, and so the R&R did not address it. As a result, though it is a separately numbered section of Plaintiff's objections, undersigned does not construe this as an objection.

[39] *Id.* at 6, 8–9.

amended complaint.[40] It is well settled that a plaintiff may not amend a complaint via arguments made in a brief, even when proceeding *pro se*. *Davis-Harrison v. Chief United States Prob. Officer Middle Dist. of Fla.*, No. 22-14334, 2024 WL 2874046, at *2 (11th Cir. June 7, 2024) (per curiam) (collecting cases). While Plaintiff could conceivably seek to amend her complaint to include such claims via a proper motion,[41] the objection to the R&R on this ground is **OVERRULED**.

As to the ADA retaliation claim in Count 2, Plaintiff objects that the R&R did not consider the pattern of retaliatory conduct that she alleged, instead considering only her suspension in May 2019.[42] Indeed, Plaintiff makes several arguments regarding the retaliatory hostile work environment that Defendant allegedly created after she requested an accommodation for her allergies.[43] But the R&R deftly navigated the distinction between Defendant's alleged retaliation based on a discrete event (the suspension) in Count 2, which was dismissed as untimely, and a pattern of retaliatory conduct creating a hostile work environment in Count 3, which will proceed.[44] The ADA retaliation and retaliatory hostile work

---

[40]  *See generally* ECFs 31, 51.

[41]  Undersigned takes no position as to the propriety of such a motion to amend the complaint.

[42]  *See generally* ECF 57.

[43]  *Id.*

[44]  ECF 51, at 16–19.

environment claims are based on the same statutory provision, *see Bosarge v. Mobile Area Water & Sewer Serv.*, No. 20-14298, 2022 WL 203020, at *11–13 (11th Cir. Jan. 24, 2022) (per curiam) (citing 42 U.S.C. § 12203(a)), but they are proven differently, *see id.* at *13 (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 857 (11th Cir. 2020)) (holding that a plaintiff must show, "in addition to the other elements required to establish a retaliation claim, that the alleged retaliatory conduct 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'"); *see also Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1356 (11th Cir.) (explaining the distinction between a retaliation claim and a retaliatory hostile work environment claim in the Title VII context), *cert. denied sub nom. Terrell v. McDonough*, 145 S. Ct. 273 (2024).

Plaintiff has not shown that Judge Cannon erred in recommending dismissal of Count 2, because the R&R essentially agreed with her substantive premise—that she timely and adequately alleged a pattern of retaliatory activity under the ADA in response to her request for accommodations—but in a separate count, *i.e.*, Count 3. Plaintiff has not shown that the R&R erred in concluding that she could not maintain an ADA retaliation claim based on her May 2019 suspension, because it was untimely. *See Manley v. DeKalb Cnty.*, 587 F. App'x 507, 512 (11th Cir. 2014) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–

14 (2002)) (affirming the district court's conclusion that a suspension is a discrete act of discrimination). Accordingly, Plaintiff's objection is **OVERRULED**.

## IV.    Conclusion

The parties' objections to the R&R [ECFs 56, 57] are **OVERRULED**, and undersigned **ADOPTS** the R&R [ECF 51] as the Order of this Court. Defendant's motion to dismiss [ECF 36] is **GRANTED IN PART and DENIED IN PART**. Specifically, Counts 2, 4, 5, and 6 are **DISMISSED**, and Count 1 is **DISMISSED** except as to Plaintiff's claim that Defendant unlawfully denied her accommodation request in October 2019.

The Clerk is **DIRECTED** to resubmit this case to Judge Cannon for further proceedings.

**SO ORDERED** this 28th day of March, 2025.

_____
Steven D. Grimberg
United States District Judge